UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 10-68 (JRT/LIB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| BRENT MICHAEL FREEMAN, | |
| Defendant. | |

Erika R. Mozangue, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Caroline Durham, Assistant Federal Public Defender, **OFFICE OF THE FEDERAL DEFENDER**, 107 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendant.

On March 18, 2010, Brent Michael Freeman was indicted on one count of possessing child pornography and one count of receiving child pornography. On April 12, 2010, Freeman moved to suppress evidence obtained as a result of searches and seizures that were carried out pursuant to two search warrants, and to suppress statements, admissions, and answers made during the execution of the warrants. The matter is before the Court on Freeman's objections to the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, dated May 13, 2010. Freeman objects to the Magistrate Judge's recommendation that the Court deny the motions to suppress.

The Court has conducted a *de novo* review of Freeman's objections. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court overrules Freeman's objections, adopts the Report and Recommendation, and denies Freeman's motions to suppress.

## BACKGROUND[1]

Freeman was indicted by a grand jury on March 18, 2010 for possessing child pornography in violation of 18 U.S.C. §§ 2252(a) and (b), and receiving child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(2). The government seeks to introduce into evidence computer equipment, numerous CDs and CD-ROMs, two VHS tapes, handwritten notes containing web addresses, receipts, a note containing an e-mail address, records and information in defendant's Yahoo e-mail account, transactional information associated with the Yahoo accounts, purchases made, websites visited, services or information accessed through personalized home webpages, and subscriber information for any Yahoo subscribers who sent messages to, or received messages from, Freeman or the Yahoo account. The government also seeks to introduce statements made by Freeman during the execution of the search warrant for his residence. Freeman asserts that the search warrants were not supported by probable cause and were stale, and that the Court should suppress evidence seized pursuant to the execution of the warrants.

---

[1] The Court recites the facts only to the extent necessary to rule on Freeman's specific objections to the Report and Recommendation. The Magistrate Judge's Report and Recommendation describes facts pertinent to that issue. The Report and Recommendation provides a full discussion of facts related to this case.

Freeman further argues that the Court should suppress any statements he made during the course of an interview with law enforcement officials because the statements were made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

## I. FIRST WARRANT

The first of the challenged warrants authorized a search of Freeman's residence for internet billing and use records; records or other items that evidenced the ownership of computer equipment; any records or documents concerning a specific email address; any visual depictions of minors engaged in sexually explicit conduct in any format or media; correspondence, books, ledgers or other records pertaining to the possession receipt, distribution, or advertisement of visual depictions of minors engaged in sexually explicit conduct that were transmitted or received using a computer or other means of interstate or foreign commerce; and computers and all related equipment. (Search Warrant, Docket No. 1.) FBI Special Agent Timothy D. Ball filed an affidavit supporting the application for the search warrant. (Affidavit of Timothy D. Ball ¶ 6, Docket No. 1.)

On December 7, 2006, Yahoo sent a report through the Cybertipline to the National Center for Missing and Exploited Children ("NCMEC") indicating that an individual with the email address freeman@wcta.net had posted images of child pornography on the website http://www.photos.yahoo.com/free42069. (*Id.* ¶ 29.) Yahoo also produced sixty-six images from the site with the report. (*Id.*) Utilizing the Child Victim Identification Program ("CVIP"), NCMEC determined that ten of the images depicted children identified as victims of child pornography ranging in age from three to

eight years old, engaged in sexually explicit conduct with each other and with adults. (*Id.* ¶ 35.)

On December 18, 2006, Yahoo provided information to the FBI indicating that the IP addresses submitted by Yahoo belonged to the West Coast Central Telephone Association ("WCTA"). (*Id.* ¶ 32.) FBI Agent Alicia Baumann served an administrative subpoena on WCTA on January 16, 2007 requesting the account and subscriber information for the email address freeman@wcta.net. (*Id.* ¶¶ 31, 33.) WCTA reported that the IP addresses and email account were registered to Freeman and identified the residential address Freeman provided to WCTA. (*Id.* ¶ 33.) An AutoTrack search confirmed that Freeman resided at the address reported by WCTA. (*Id.* ¶ 34.)

On April 5, 2007, a database check of the Minnesota Department of Motor Vehicles revealed that Freeman was residing at the address identified by WCTA. (*Id.* ¶ 37.) Ball drove past the residence and noted a white Jeep Cherokee with a license plate MGN 688 that was registered to Freeman at the same address Freeman provided to WCTA as his residence. (*Id.* ¶ 36.)

In his affidavit, Ball stated that computers have revolutionized the way in which individuals interested in child pornography interact with each other by making it easy and inexpensive to produce and store child pornography. (*Id.* ¶ 6.) Ball detailed how individuals interested in child pornography utilize email, chat rooms, and messaging boards to locate others of similar inclination and obtain pornographic images in a relatively secure and anonymous format. (*Id.* ¶¶ 11-14.) Further, according to Ball "Child pornography collectors almost always maintain and possess their material in the

privacy of their homes . . . where it is readily available . . . the collector rarely, if ever, disposes of the collection." (*Id.* ¶¶ 27-28.) Ball states that even if a collector deletes the files from his hard drive or other electronic media they can be retrieved using forensic tools. (*Id.* ¶ 28.) According to Ball, when a computer visits a website its Internet Protocol address ("IP address") can be captured to identify the particular computer that was used. (*Id.* ¶ 21.) Further, Ball stated that child pornographers are known to store their images on their computers' hard drives, on floppy disks, or on external hard drives. (*Id.* ¶¶ 15-16.)

The Magistrate Judge found that "ample probable cause supported the issuance of [the] Warrant . . . and . . . that the Warrant was not otherwise fatally defective." (Report and Recommendation at 22, Docket No. 35.)

## II. SECOND WARRANT

The Magistrate Judge authorized a second search warrant on July 2, 2007, authorizing a search of the website located at http://photos.yahoo.com/free42069, which is controlled by Yahoo Inc.

In support of his application for the second warrant, Ball averred in a second affidavit that in order to subscribe to a Yahoo account, individuals must provide basic information including their name and zip code. (Second Ball Aff. ¶ 3(a), Docket No. 3.) Yahoo maintains electronic records pertaining to account access, email transactions, and account applications. (Second Ball Aff. ¶ 3(b).) Emails sent to Yahoo subscribers are stored in their mailboxes until that subscriber deletes the email. (*Id.* ¶¶ 3(b)-(c).) If a

subscriber does not delete a message, it remains on the server indefinitely if the subscriber accesses the account periodically. (*Id.* ¶ 3(c).) Yahoo users can also save a copy of emails sent to other individuals, which can remain in the mailbox of the recipient indefinitely if not deleted. (*Id.* ¶ 3(d).) In addition, a subscriber can store emails and image files on servers maintained or owned by Yahoo. (*Id.* ¶ 3(e).) In further support of the second warrant Ball reiterated the details as to the investigation into the tip made to NCMEC. (*Id.* ¶¶ 10-16.)

The Magistrate Judge also found the second warrant to be supported by sufficient probable cause. (Report and Recommendation at 33, Docket No. 35.)

## III. STATEMENTS BY FREEMAN

Ball testified that he arrived at Freeman's residence on July 9, 2007 to execute the first warrant along with four other law enforcement officers. (Mot. Hr'g Tr. 7:19-23, April 19, 2010, Docket No. 39.) According to Ball, the FBI's standard procedure for the execution of a search warrant is to have officers on all sides of the property prior to entering the residence, though Ball could not recall if that occurred during the execution of the warrant at Freeman's residence. (*Id*. at 19:14-20.) Ball knocked on the door and announced who he was. (*Id.* at 7:19-23.) When Freeman answered the door, Ball advised him that he had a federal search warrant for the residence. (*Id.*) Upon entering the residence, Ball told Freeman he was free to leave. (*Id.* at 8:16-19.) Freeman said he would rather stay while the warrant was executed. (*Id.* at 7:22-23.) Ball asked Freeman if he would be willing to answer some questions, and informed Freeman that he did not

have to answer any questions, again reminding him that he was free to leave. (*Id.* at 8:16-19.) Freeman responded by agreeing to an interview and stated he wanted to assist in the investigation and wanted to tell the truth. (*Id.* at 8:21.)

Ball did not advise Freeman of his *Miranda* rights because Ball asserts that Freeman was not under arrest, nor in custody at the time of the interview. (Mot. Hr'g Tr. 8:22-25, 9:1-3, Docket No. 39.) Ball and two other law enforcement officers were present in the living room for the interview while the other two officers searched the remainder of the residence. (Mot. Hr'g Tr. 9:1-25, 10:1-2, Docket No. 39.) Ball states that Freeman was not handcuffed, and Ball and another officer were in casual clothes, however Ball believes he may have been wearing his "raid vest." (*Id.* at 10:14-25, 11:1.) Ball acknowledged that he and the other officers were armed but could not recall whether their weapons were visible. (*Id.* at 11:2-4.) Ball related that the tone of the interview was conversational, and Freeman was clearheaded and seemed to understand who they were and what the questions were about, although he was nervous. (*Id.* at 11:13-15, 12:23-25.) Ball also testified that neither he nor the other officer raised their voices or yelled at Freeman, nor did they threaten him or make any promises. (*Id.* at 12:12-22.)

According to Ball, during the interview Freeman asked if he should get an attorney. (*Id.* at 11:7.) Ball responded that he could not give Freeman legal advice, but if he thought he needed a lawyer, that was his right. (*Id.* at 11:7-10.) Freeman did not subsequently ask for an attorney or raise the issue of a lawyer at any other time during the interview. (*Id.*) At one point Freeman stated "I just hung myself, I'm going to go to

jail." (*Id.* at 13:1.) The interview lasted approximately fifteen minutes and following the interview the officers left the residence without arresting Freeman. (*Id.* at 13:8-13.)

The Magistrate Judge found that Freeman was not in custody, thus his *Miranda* rights were not implicated in the statements he gave to the law enforcement officers. (Report and Recommendation at 40, Docket No. 35.)

Freeman filed timely objections to the Report and Recommendation

## DISCUSSION

Freeman objects to the Magistrate Judge's recommendation that the Court deny the motions to suppress evidence and statements, arguing that the Magistrate Judge erred by concluding the information gathered on July 2 and July 9, 2007, was not stale and was sufficient to provide a reasonable probability that evidence of criminal activity would be located at the place to be searched. For the reasons set forth below the Court overrules Freeman's objections and adopts the Report and Recommendation in its entirety.

## I. FREEMAN'S MOTION TO SUPPRESS EVIDENCE

To establish probable cause, it must be demonstrated that in light of all circumstances set forth in the supporting affidavit there is a fair probability that contraband will be found in a designated place. *See United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995). Search warrant applications and affidavits should be read with common sense, and when conducting an examination the court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis. *See United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002); *United States v. Anderson*, 933 F.2d 612, 614

(8th Cir. 1991). "[P]robable cause must exist at the time of the search, and not merely at sometime earlier." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). A lapse of time between the observations of a witness and the issuance of a search warrant may make probable cause stale. *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). There is no bright-line test for determining when information is stale, and the passage of time alone is not always the controlling factor. *Id.* Other factors such as the nature of the criminal activity and the kind of property subject to the search are also relevant to the inquiry. *Id.* The Court must consider the passage of time in the context of a specific case and the nature of the crime under investigation. *Id.* at 397-98 (upholding a warrant based on four-month-old information that defendant possessed firearms, because firearm enthusiasts tend to retain their weapons for long periods of time).

### A. First Warrant

The Court agrees with the Magistrate Judge that the information supporting the first search warrant was not stale. A seven-month delay between the receipt of information suggesting child pornography could be found in Freeman's email account or home and the execution of the search warrant does not necessarily render the information stale. *See United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010) (eighteen-month interval between evidence linking defendant to child pornography and warrant application did not render the information stale); *United States v. Chrobak*, 289 F.3d 1043, 1046 (8th Cir. 2002) (three-month-old information not stale); *United States v. Rugh*, 968 F.2d 750, 754 (8th Cir. 1992) (not stale after sixteen months); *United States v.*

*Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) (twelve months does not render information stale especially where child pornography is concerned); *United States v. Toups*, No. 2-06, 2007 WL 433562, at *4 (M.D. Ala. Feb. 6, 2007) ("Further bolstering the conclusion that the staleness calculation is unique . . . [in] . . . cases of child pornography is the images and videos stored on a computer are not easily eliminated . . . .").

Individuals who collect child pornography tend to retain and add to their collections. (Ball Aff. ¶ 27, Docket No. 1.) Ball provided credible testimony from his professional experience that the Magistrate Judge reasonably relied upon. (Mot. Hr'g Tr. 6:7-25, Docket No. 39.) Further, the many ways in which digital media can be stored in vast quantities, such as on a computer's hard drive, an external hard drive, or a USB "thumb" drive, suggest that even though the first indications of a collection of child pornography are found several months before a warrant is executed, the information in the warrant will not be outdated. (Ball Aff. ¶ 16, Docket No. 1.) The unique ability of digital files to endure on multiple platforms, along with the tendency of collectors of child pornography to retain and add to their collections, demonstrate that a span of approximately seven months between notification of the possession of child pornography and the execution of a search warrant does not render the warrant fatally stale.

The totality of the circumstances suggests that the Magistrate Judge who issued the warrant was provided with information establishing a reasonable likelihood that a search of Freeman's residence would reveal evidence of criminal activity related to child pornography. Though Ball's affidavit addresses the individuals who collect child pornography in generalities, it was reasonable for the issuing Magistrate Judge to rely on

Ball's averments based on Ball's experience with, and training on, the investigation of violations of law in connection with child pornography.

Ball's affidavit also supports a finding that it was reasonably probable that evidence of child pornography would be discovered at Freeman's residence: the FBI received a tip that child pornography had been posted or stored on the Yahoo accounts in question, and the IP addresses associated with the Yahoo account addressee were in turn registered to Freeman. (Ball Aff. ¶¶ 29-37, Docket No. 1.) Motor vehicle records disclosed that Freeman resided at the address corresponding to the information Ball received about the IP addresses, and a vehicle registered to Freeman was parked outside that same residence. (*Id.*) The child pornography that was the subject of the tip contained images of known child victims engaged in sexually explicit conduct, a criminal activity. (*Id.*) Though the evidence of child pornography was from the Yahoo accounts, the above described storage methods for digital images make it reasonable that if images were in an email account they may have been downloaded or otherwise transferred to a stand-alone storage medium. As a result, Ball's affidavit established a fair probability that evidence of criminal activity would be found at Freeman's residence. *See United States v. Anderson*, 2007 WL 2908172, at \*2 (D. Minn. Oct. 2, 2007). Accordingly, the Court overrules the defendant's objection to the Magistrate Judge's recommendation to deny the suppression of evidence based upon a lack of probable cause for the first warrant.

B. **Second Warrant**

The second warrant was issued and executed on July 2, 2007, and directed Yahoo to produce information and records connected to the Yahoo account in which the child pornography had been discovered. Freeman objects that Ball used only generalities to support his application for a search warrant for the Yahoo account, and that the account had been closed for six months prior to Yahoo's notification of NCMEC.

As noted above, a period of approximately seven months between the receipt of information connecting the Yahoo account to child pornography and the application for and execution of the search warrant does not render the information stale. This is particularly true in light of the fact that an email sent or received by a Yahoo subscriber can remain on Yahoo's servers indefinitely, if the subscriber does not delete the files or exceed storage limitations. As discussed above, child pornography involves the kind of criminal activity in which the evidence is unlikely to be discarded. *See Lemon*, 590 F.3d at 614-15. The Court finds that the information supporting probable cause to issue the second warrant was not stale, and a sufficient nexus existed between the information about the child pornography, Freeman, and his Yahoo account to support a finding of probable cause.

Under the totality of the circumstances, sufficient information existed to establish a fair probability that evidence of criminal activity related to child pornography would be found in Defendant's Yahoo accounts and in the other requested records. The Court thus

overrules Freeman's objection to the Magistrate Judge's recommendation to deny the suppression of evidence.[2]

### C. Motion to Suppress Statements

The statements at issue were made during an interview between Freeman and two law enforcement officers. Freeman made the statements while he was in his living room, after he had been advised that he could leave the house and did not have to answer questions. He was not advised of his rights under *Miranda* because Ball did not believe Freeman was in custody. Freeman objects to the Magistrate Judge's recommendation to not suppress the statements on the grounds that a custodial setting was present while law enforcement officers questioned him.

Government agents are not required to administer *Miranda* warnings to everyone they question. *See Oregon v. Mathiason*, 429 U.S. 492, 494-95 (1977). Such warnings are only required for situations in which a person has been taken into custody and is subjected to questioning rising to the level of an interrogation. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985). In order for statements made to law enforcement officials by a person in custody to be admissible in court, the person must be informed of his constitutional right to remain

---

[2] The officer's reliance on the search warrants was reasonable, because neither of the warrants was "so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." *United States v. Leon*, 468 U.S. 897, 922 (1984) ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."); *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897 922, 922-23 (1984). The warrants were supported by affidavits, and no other facts have been alleged to suggest that a reasonable officer would have had cause to believe the warrants were deficient.

- 13 -

silent, and to be represented by counsel during questioning. *Dormire v. Wilkinson*, 249 F.3d 801, 803-804 (8th Cir.), *cert. denied,* 534 U.S. 962 (2001); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Additionally, in order for a confession to be admitted into evidence, it must have been voluntary. *Dickerson v. United States*, 530 U.S. 428, 433-34 (2000).

Because Freeman was never advised of his *Miranda* rights, the relevant inquiries are whether Freeman was in custody at the time of questioning, and if not, whether his statements were otherwise involuntary. *Dormire*, 249 F.3d at 803-804. Determining whether an individual was in custody requires the court to examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is whether there was a formal arrest or restraint of freedom of movement as with a formal arrest. *Stansbury*, 511 U.S. at 322. The relevant factors to be considered in determining whether an individual was in custody include an individual's freedom to leave the scene, and the purpose, place, and length of the interrogation. *United States v. Griffin*, 922 F.2d 1343, 1348-49 (8th Cir. 1990); *see also United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006).

Here, Ball advised Freeman that he was under no obligation to speak, and that he was free to leave or terminate the interview at any time. Further, Freeman's freedom of movement was not restrained in any way: he was not placed in handcuffs or in a law enforcement vehicle, or required to remain in any specific place in his home. Freeman told Ball he would prefer to stay at his residence while the search warrant was executed. Ball asked Freeman if he was willing to answer some questions, stating that he was not

required to do so and was free to leave. Freeman agreed to an interview and stated that he wanted to assist in the investigation and wanted to tell the truth. (Mot. Hr'g Tr. 8:21, Docket No. 39.)

There is no evidence that Ball or any other agents employed coercive or deceptive strategies when questioning Freeman. Ball stated that they did not raise their voices, make any promises, or threaten Freeman. The interview lasted less than half an hour, and at the end Freeman was not placed under arrest, and Ball did not indicate that he intended to arrest Freeman. *See United States v. Sutera*, 933 F.2d 641, 647 (8th Cir. 1991) (noting that "it is very important that the officers did not contemplate arresting [defendant]," which indicates that the interview was just a part of the investigation). It further appears that no weapons were drawn. Given the totality of the circumstances surrounding the interview, no reasonable person could have believed that his freedom to depart was restrained, thus Freeman was not in custody and *Miranda* warnings were not required.

There is nothing in the factual record to suggest that Freeman's statement was not voluntary. Freeman elected to remain in his home while it was searched, and agreed to be interviewed by law enforcement officers. He was not handcuffed or restrained, and there is no evidence that the officers engaged in coercive or threatening conduct during the course of the interview. There is no evidence that Freeman was promised anything, and the officers told Freeman he was not obligated to cooperate and could cease the interview at any time. Ball testified that Freeman, though nervous, appeared to understand what was happening and what the officers were asking him. The Court finds that Freeman's statements were voluntary as the law enforcement officers did not engage

in coercive conduct or otherwise overbear Freeman's will. The Court overrules Freeman's objections to the Magistrate Judge's recommendation that the Court deny the motion to suppress statements.

## II.  REQUEST FOR COUNSEL

In order to invoke the right to counsel, a suspect's request must be unambiguous and unequivocal. *Davis v. United States*, 512 U.S. 452, 461-62 (1994). In order for a suspect's request to be unequivocal he must articulate his desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney. *Id.* at 462 (holding that the statement "maybe I should talk to a lawyer" was equivocal); *see also United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003) (holding that the statement "do you know any good attorneys?" was insufficient to invoke defendant's right to counsel). The *Davis* court declined to adopt a rule requiring interviewing officers to ask clarifying questions following an equivocal invocation of counsel. *Davis*, 512 U.S. at 461. Freeman asked if he should seek an attorney and Ball responded that he could not give legal advice. Freeman did not subsequently ask for an attorney and, according to Ball, he indicated a willingness to continue with the questioning. Freeman's question was not an unequivocal invocation of his right to counsel; and as a result, his statements will not be suppressed.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** defendant's objections [Docket No. 45], and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 35] in its entirety. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Brent Michael Freeman's motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 25] is **DENIED**.

2. Defendant Brent Michael Freeman's motion to Suppress Statements, Admissions, and Answers [Docket No. 26] is **DENIED**.

DATED: October 28, 2010  
at Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim\_\_\_\_\_  
JOHN R. TUNHEIM  
United States District Judge